# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DEBORAH ALBERTSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-161-RAW-KEW |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Deborah Albertson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 3, 1957 and was 50 years old at the time of the ALJ's first decision. Claimant completed her high school education. Claimant has worked in the past as a nurse's aide, wiper, riveting machine operator, material handler, and hand packer. Claimant alleges an inability to work beginning January 1,

3

2003 due to limitations resulting from pain in her back, hands, and feet, asthma, hypothyroidism, obesity, bipolar disorder, and attention deficit disorder.

**Procedural History**

On September 7, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After the ALJ issued an unfavorable decision which the Appeals Council declined to review, this Court reversed the ALJ's decision on July 14, 2009 and remanded the case for further proceedings. The Appeals Council reversed the ALJ's decision and the matter was remanded.

A second administrative hearing was conducted before ALJ Lantz McClain on January 4, 2010. On June 23, 2010, the ALJ issued a second unfavorable decision on Claimant's applications. Claimant did not appeal to the Appeals Council. Again, this Court reversed the ALJ's second decision on March 29, 2012 and remanded the case for further consideration.

On remand, a third administrative hearing by video conference was conducted by ALJ Doug Gabbard. On December 12, 2012, the ALJ issued a partially favorable decision, granting Claimant disability

4

benefits as of March 3, 2012.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.984.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in:  (1)  reaching an improper RFC which was not based upon substantial evidence; and (2) making erroneous findings at step five of the sequential evaluation.

**RFC Assessment**

In his decision, the ALJ determined Claimant suffered from the severe impairments of asthma, obesity, affective mood disorder, and generalized anxiety disorder with associated panic attacks with agoraphobia. (Tr. 421). He concluded Claimant retained the RFC to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for 6 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday.  The ALJ further restricted Claimant's exposure to dust, fumes, gases, odors and

5

other respiratory irritants. Due to psychologically based factors, Claimant was found to be able to perform unskilled work (work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time) where supervision is simple, direct and concrete, interpersonal contact with coworkers is incidental to the work performed, like assembly work, and Claimant would have only occasional dealings with the public. (Tr. 429). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of bagger (garment), and price marker, both of which the vocational expert testified existed in sufficient numbers in the regional and national economies. (Tr. 438). The ALJ on remand found that on March 3, 2012, Claimant's age category changed from "closely approaching advanced age" to "advanced age," thereby warranting the awarding of benefits as of that date. (Tr. 438). Claimant received a partially favorable decision. She now challenges the finding of non-disability between her alleged onset date of January 1, 2003 and the award date of March 3, 2012.

Claimant contends the ALJ failed to properly evaluate her RFC. The medical evidence remains much as it existed when this Court issued its prior opinion. Dr. Robert Spray evaluated Claimant's mental condition in a consultative evaluation conducted on

September 10, 2007. Dr. Spray found Claimant's orientation, memory and concentration, fund of information, abstract reasoning, and judgment were appropriate. (Tr. 197-98). Dr. Spray estimated Claimant's IQ to be low average. (Tr. 198). Dr. Spray found possible exaggeration in the Beck Depression Inventory-II. (Tr. 199). The Personality Assessment Inventory performed by Claimant "produced a grossly exaggerated, invalid PAI profile." Nevertheless, Dr. Spray diagnosed Claimant with Bipolar Disorder, NOS, by medical records, with psychotic features, Anxiety Disorder, NOS (with possible PTSD issues), and Personality Disorder, NOS, with schizotypal, avoidant, and borderline features. Id.

Dr. Spray also completed a form entitled Residual Functional Capacity Secondary to Mental Impairments, including Pain, Fatigue, and Hysterical Paralysis. He found severe restrictions in Claimant's ability to relate to co-workers, interact with supervisors, deal with work stresses, maintain regular attendance, work in coordination or proximity to others without being distracted by them, complete a normal workday, complete a normal workweek, demonstrate reliability, behave in an emotionally stable manner, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 200-201).

7

Dr. Spray authored a letter dated February 8, 2008 concerning Claimant's condition. He states in a "to whom it may concern" correspondence that his conclusions were not influenced by the fact Claimant was referred by counsel and were not based upon certain testing, which he considered to be invalid. Rather, he states, his conclusions were based upon the "interview/mental status" and "drawn from the interview and medical history." (Tr. 237).

On July 14, 2009, this Court reversed the ALJ's decision and remanded the case for a re-evaluation of Dr. Spray's opinions. Specifically, the ALJ was directed to provide a discussion of the weight the ALJ gave to Dr. Spray's opinions and to consider whether his findings of a personality disorder should be a severe impairment. This Court also instructed the ALJ to re-assess Claimant's RFC in light of the reconsideration of Dr. Spray's opinions and to provide a proper analysis under step four of the demands of Claimant's past relevant work as a riveter. (Tr. 274-84).

On remand, Claimant underwent a psychological assessment by Dr. Denise LaGrand on February 12, 2010. Dr. LaGrand found Claimant's thoughts to be organized, logical, and goal-directed, noting Claimant could stay focused on the exam. Claimant's overall cognitive functioning was in the Borderline Intellectual

Functioning range. Her full scale IQ score under the Wechsler Adult Intelligence Scale - 4th Edition was 75. (Tr. 378). Dr. LaGrand also found the results of the MMPI were invalid due to over-endorsement of symptoms leading to elevations in all clinical scales. (Tr. 379). Her final diagnosis was Major Depressive Disorder, moderate, Generalized Anxiety Disorder, and Borderline Intellectual Functioning. Her GAF was measured as 45. (Tr. 380).

Dr. LaGrand also completed a Mental Source Statement of Ability to Do Work-Related Activities (Mental) on Claimant dated February 22, 2010. Dr. LaGrand found Claimant to be markedly limited in the areas of the ability to make judgments on simple work-related decisions, the ability to carry out complex instructions and the ability to make judgments on complex work-related decisions. Claimant was determined to be moderately limited in the areas of understanding and remembering simple instructions, carrying out simple instructions, understanding and remembering complex instructions, interacting appropriately with the public, supervisors and co-workers, and the ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 383-84). Dr. LaGrand noted that stress and anxiety interfered with Claimant's functioning. (Tr. 384).

In his second decision after remand, the ALJ found that Dr.

Spray's and Dr. LaGrand's opinions should be afforded equal weight, noting that both gave Claimant moderate limitations in mental functioning. (Tr. 272). The ALJ also noted that virtually all of the formal testing was found to be invalid by both doctors due to over-reporting by Claimant. Id. He then stated that both doctors' reports supported a limitation upon Claimant to simple, repetitive tasks having no more than incidental contact with the public. Id.

In this latest decision, the ALJ provided "little weight" to both Dr. Spray's and Dr. LaGrand's opinions. The ALJ found Dr. Spray's opinion was "not fully supported by nor is it consistent with the medical evidence as a whole." He also found it "internally inconsistent and inconsistent with Dr. Spray's evaluation report." (Tr. 433). The ALJ noted Dr. Spray found Claimant to have no limitations in the ability to travel or use public transportation while finding marked limitations in the ability to function independently. He also found Claimant had moved from Oklahoma to Oregon and stayed with friends and a male roommate. (Tr. 433). The ALJ also found inconsistencies in the reasons given by Dr. Spray for Claimant's job loss. (Tr. 434). Curiously, the ALJ found Dr. Spray relied too heavily upon Claimant's subjective complaints without stating precisely why he reached this conclusion. (Tr. 434). The inconsistencies cited by

10

the ALJ were largely irrelevant to Dr. Spray's ultimate conclusions. Moreover, Dr. Spray's opinion does not provide any insight into an inappropriate use of Claimant's subjective complaints or statements than would be normally employed in taking a patient's medical and work history. The ALJ has reached this conclusion with an apparent subjective reading of the opinion rather than relying upon any objective indication from Dr. Spray's report.

The ALJ also gave "little weight" to Dr. LaGrand's opinion - again, finding that the opinion was not fully supported and was inconsistent. The ALJ concentrates upon findings that the reason Claimant lost her job was back problems not mental problems. (Tr. 434). This fact does not alter the objective testing and the conclusions reached by both Dr. Spray and Dr. LaGrand.

In ultimately relying upon the earlier opinions of state agency physicians which pre-dated Dr. Spray's and Dr. LaGrand's opinions, the ALJ eliminated the only two mental health professionals' opinions which engaged in thorough objective testing. The ALJ must properly evaluate the medical professionals' opinions under the rubric of <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003) which he did not do in this case. As a result, the ALJ did not potentially include all of the limitations

11

in his RFC assessment of Claimant's mental condition. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). As a result, the case will once again be remanded for evaluation of the medical opinions noted in the record.

**Step Five Analysis**

Because the ALJ potentially did not include all of Claimant's limitations in his RFC assessment, the analysis at step five is necessarily flawed. On remand, the ALJ shall re-evaluate his step five findings upon reaching a determination of the appropriate level of limitation in Claimant's RFC.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court

based on such findings.

DATED this 26th day of August, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE